UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
MEMPHIS DIVISION

| | |
|---|---|
| JOHN HANCOCK LIFE INSURANCE COMPANY (U.S.A.),<br><br>*Plaintiff*,<br><br>vs.<br><br>EUGENE ROBERSON, JR., individually and as personal representative and attorney-in-fact for the Estate of Eugene Roberson, Sr., and LASHELLE NICOLE VESTOR,<br><br>*Defendants*. | Civil Action No._____ |

# COMPLAINT

Plaintiff JOHN HANCOCK LIFE INSURANCE COMPANY (U.S.A.) ("Plaintiff" or "John Hancock"), through undersigned counsel, files this complaint against Defendants EUGENE ROBERSON, JR., individually and as personal representative and attorney-in-fact for the Estate of Eugene Roberson, Sr., and LASHELLE NICOLE VESTOR, (collectively, the "Defendants"), and in support thereof, alleges the following:

## INTRODUCTION

1. Through this lawsuit, John Hancock seeks to recover money that the Defendants have stolen from John Hancock through the submission of false and fraudulent claims under a long-term care insurance policy issued by John Hancock to Eugene Roberson, Sr. (the "Insured"). As described more fully in this Complaint, the Defendants routinely submitted claims to John Hancock for reimbursement of caregiver services that were, in fact, never rendered. As a result of

this fraudulent scheme, John Hancock was induced to pay Defendants a total of $103,320.00 in benefits under the policy.

## PARTIES

2. John Hancock is an insurance company organized and existing under the laws of the State of Michigan, with its principal place of business located in Boston, Massachusetts. At all relevant times, John Hancock has been authorized to transact business in the State of Tennessee.

3. Eugene Roberson, Jr. ("Mr. Roberson") is an adult individual residing in Orlando, Florida, and he is a citizen of the State of Florida. At all relevant times, Mr. Roberson has been the attorney-in-fact for the Insured and the personal representative of the Insured's Estate.

4. Lashelle Nicole Vestor ("Ms. Vestor") is an adult individual residing in Memphis, Tennessee, and she is a citizen of the State of Tennessee.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship between John Hancock and Defendants, and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because this is the judicial district in which one or more of the Defendants reside, and also because this is the judicial district in which a substantial part of the acts and omissions giving rise to John Hancock's claims against Defendants occurred.

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

7. On or around August 14, 2000, John Hancock issued a long-term care insurance policy to Eugene Roberson, Sr. (defined above as the "Insured)—Policy No. 9408732 (the "Policy").

8. Under the Policy, the Insured was eligible to receive reimbursement for expenses incurred for certain qualified long-term care services, up to a daily maximum amount of $60.00.

9. In order to qualify for reimbursement of qualified long-term care services, the Policy required the Insured to satisfy the following eligibility requirements:

> 2.9 **Eligibility for the Payment of Benefits**
>
> You are eligible for benefits under this Policy if:
>
> - You need **Substantial Assistance** to perform at least two of the **Activities of Daily Living**; or
> - You require substantial supervision to protect **Yourself** from threats to health and safety due to the presence of a **Cognitive Impairment**.

10. The Policy further required the qualified long-term care services to be provided by an Independent Home Health Care Provider approved by John Hancock, defined in the Policy as follows:

> - An **Independent Home Health Care Provider** means a care provider not employed by a **Home Health Agency** who meets one of the following requirements. He or she:
>   - is a duly licensed registered nurse, licensed vocational nurse, licensed practical nurse, physical therapist, occupational therapist, speech therapist, respiratory therapist, licensed social worker, or registered dietitian; or
>   - must be currently qualified as a certified home health aide or certified nurse aide; or
>   - must be currently included in a government sponsored nurse aide registry; or
> - In the case of a home health aide or nurse aide who does not meet one of the standards set forth above, such aide must present written proof of completion of an established training course, acceptable to us, which must include training in safely assisting persons with the **Activities of Daily Living**.

11. In the event the Insured satisfied the Policy's eligibility requirements and received qualified long-term care services from an approved Independent Home Health Care Provider, the Insured would receive reimbursement for home health care benefits, described in the Policy as follows:

> 2.23 **Payment of the Home Health Care Benefit**   **We** will pay the Home Health Care Daily Benefit if:
> - **You** are receiving **Home Health Care**, **Hospice Care** or **Respite Care** in **Your** home, a rest home or in an **Adult Day Care Center**; and
> - **We** determine **You** are eligible for the payment of benefits under this Policy.
>
> **We** will pay the actual charges incurred for a provider of **Home Health Care** up to the Home Health Care Daily Benefit as shown in the Policy Schedule. Any unused portion of **Your** Daily Benefit will remain in the Policy Limit.

In other words, the Policy reimburses the Insured only for those caregiver services actually received and paid for, up to the $60.00 maximum daily amount set forth in the Policy Schedule.

12. Following issuance of the Policy, the Insured initiated a claim for long-term care benefits, contending that he required a caregiver's assistance due to health issues arising from Parkinson's disease and a cervical fusion, among other things.

13. Effective January 1, 2012, John Hancock approved the Insured's claim for long-term care benefits under the Policy, subject to the terms and conditions of the Policy for receipt of benefits.

14. On or around May 7, 2013, Eugene Roberson, Jr. (defined above as "Mr. Roberson") submitted to John Hancock a Power of Attorney executed on February 8, 2013, purporting to appoint Mr. Roberson as power of attorney for the Insured. Among other things, the

Power of Attorney specifically authorized Mr. Roberson to act on the Insured's behalf with respect to his insurance policies.

15. Following the initial approval of the claim and through August 2016, the Insured received long-term care services from various approved caregivers, which John Hancock paid and which are not at issue in this Lawsuit at this time.

16. On or around September 7, 2016, Mr. Roberson submitted to John Hancock an Independent Care Provider Form and Guidelines ("Provider Form"), under which he sought to have Lashelle Vester (defined above as "Ms. Vester") approved as an authorized Independent Home Health Care Provider. The Provider Form was signed by both Ms. Vester and Mr. Roberson, as power of attorney for the Insured, attesting that Ms. Vester satisfied the Policy's eligibility requirements to be an Independent Home Health Care Provider. Along with the Provider Form, the Defendants submitted a certification card from the Tennessee Division of Health Care Facilitates indicating that Ms. Vester is a certified nurse aide.

17. Based upon the representations in the Provider Form, John Hancock approved Ms. Vester as an authorized Independent Home Health Care Provider.

18. Pursuant to the terms of the Policy and as a condition precedent to payment of benefits, the Insured was required to submit a written form to John Hancock, known as an Independent Care Provider Service Bill ("Service Bill"), to establish proof of loss under the Policy. Each Service Bill details the caregiver's name, the date on which the caregiver provided services, the caregiver's total charge for that date, the start and stop times of service, and a description of the services provided.

19. Ms. Vester and Mr. Roberson, on behalf of the Insured, periodically submitted Service Bills to John Hancock, representing that Ms. Vester provided certain caregiver services to

the Insured from August 15, 2016 through October 30, 2021.  A true and correct copy of the Service Bills are collectively attached hereto as **Exhibit A**.

20. All Service Bills were submitted by Mr. Roberson to John Hancock via facsimile, and all Service Bills were signed by Ms. Vester, as the Insured's Independent Home Health Care Provider, and Mr. Roberson, as the Insured's legal representative, verifying the accuracy of the statements and information contained therein.  *See* **Exhibit A**.

21. In reliance on the truthfulness and accuracy of the Service Bills, John Hancock reimbursed the Defendants the total amount of $103,320.00 for caregiver services allegedly provided by Ms. Vester from August 15, 2016 through October 30, 2021.

22. On or around December 12, 2021, the Insured died.

23. Prior to the Insured's death, John Hancock conducted a routine review of Insured's claim to determine if he was actually receiving care from Ms. Vester as represented by the Defendants in the Service Bills.

24. In conjunction with its review, John Hancock performed surveillance on the Insured and Ms. Vester to observe their daily activities.  Surveillance was performed on July 23, 2021; July 24, 2021, August 8, 2021; and August 9, 2021.  During each day of surveillance, Ms. Vester was not observed with the Insured or at the Insured's home.  Notwithstanding, Defendants submitted Service Bills to John Hancock representing that Ms. Vester provided caregiver services to the Insured at his home between the hours of 8:00 a.m. and 4:00 p.m. on each of these days.

25. In conjunction with its review, John Hancock also performed a social media search of the Insured and Ms. Vester.  A review of Ms. Vester's Facebook profile revealed posts and pictures confirming she was not at the Insured's home providing caregiver services as represented in the Service Bills on April 13, 2018; October 9, 2020; June 22, 2021; July 16, 2021; August 6,

2021; August 11, 2021; August 18, 2021; August 27, 2021; October 25, 2021; and October 29, 2021. By way of example, Ms. Vester's Facebook posts and pictures confirm she was at the Gold Strike Casino Resort in Tunica, Mississippi on April 13, 2018; Ms. Vester was at the MGM Grand Hotel in Las Vegas, Nevada on October 9, 2020; and Ms. Vester was at Pappadeaux Seafood Kitchen in Norcross, Georgia on June 22, 2021.

26. In conjunction with its review, John Hancock also learned that Ms. Vester's daytime job was in the Emergency Room at Methodist University Hospital since at least 2017. Notwithstanding, Defendants submitted Service Bills to John Hancock representing that Ms. Vester provided caregiver services to the Insured at his home on a daily basis during this period, typically between the hours of 8:00 a.m. and 4:00 p.m.

27. In conjunction with its review, John Hancock attempted to interview Mr. Roberson on December 7, 2021 and December 8, 2021. Tellingly, Mr. Roberson was unable to explain the billing discrepancies uncovered during John Hancock's investigation, and Mr. Roberson additionally stated he would not cooperate with John Hancock's investigation.

28. In conjunction with its review, John Hancock made numerous attempts to interview Ms. Vester. However, Ms. Vester did not respond to John Hancock's repeated communications.

29. In light of these findings, John Hancock determined that Defendants had undertaken a scheme to defraud John Hancock of benefits under the Policy.

30. By letter dated March 8, 2022, John Hancock demanded repayment of the $103,320.00, which Defendants obtained through false and fraudulent pretenses.

31. Having received no response to its letter, John Hancock again demanded repayment of the $103,320.00 by letters dated April 13, 2022; May 25, 2022; September 12, 2022; August 1,

2022; and November 16, 2022. To date, Defendants have refused to respond and return any money to John Hancock, necessitating the need for John Hancock to retain counsel and file this lawsuit.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF – FRAUD
### (Against all Defendants)

32. John Hancock restates, re-alleges, and incorporates herein by reference the preceding paragraphs of this Complaint as if fully set forth herein.

33. Defendants knowingly and willfully misrepresented, or caused to be misrepresented, material facts to John Hancock as described in the preceding paragraphs.

34. The Service Bills (Exhibit A) submitted to John Hancock constitute false and fraudulent statements of material fact in that Ms. Vester did not actually provide the qualified caregiver services to the Insured at his home on the dates and times stated in the Service Bills.

35. Defendants intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated scheme to induce John Hancock to pay claims for home care services that were never actually rendered by Ms. Vester.

36. John Hancock reasonably and justifiably relied on the Defendants' false and fraudulent statements and concealments to its detriment, and John Hancock has been injured in its business and property by reason thereby in that it has paid benefits for claims that, unbeknownst to John Hancock at the time, were false, fraudulent, and not covered under the Policy.

37. Prior to completing its investigation in March 2022, John Hancock was completely unaware of the falsity and extent of Defendants' misrepresentations and could not have discovered Defendants' fraud.

38. As a direct and proximate result of Defendants' false and fraudulent misrepresentations, John Hancock paid $103,320.00 in benefits to which Defendants were not entitled.

39. Defendants' conduct, described herein, was intended to cause injury to John Hancock or was conduct carried out by Defendants with a willful and conscious disregard of the rights of John Hancock, and Defendants acted with specific intent to deprive John Hancock of property, legal rights, and/or to otherwise cause injury, such as to constitute malice, oppression or fraud, thereby entitling John Hancock to punitive damages in an amount appropriate to punish or set an example of Defendants.

40. John Hancock incurred additional losses in an amount to be determined at trial relating to the cost of investigating the claim.

**SECOND CLAIM FOR RELIEF –UNLAWFUL INSURANCE ACTS UNDER T.C.A. § 56-53-103**
**(Against all Defendants)**

41. John Hancock restates, re-alleges, and incorporates herein by reference the preceding paragraphs of this Complaint as if fully set forth herein.

42. T.C.A. § 56-53-103 states in part that:

(a) Any person who commits, participates in, or aids, abets, or conspires to commit, or solicits another person to commit, or permits its employees or its agents to commit any of the following acts with an intent to induce reliance, has committed an unlawful insurance act:

(1) Presents, causes to be presented, or prepares with knowledge or belief that it will be presented, by or on behalf of an insured, claimant or applicant to an insurer, insurance professional or a premium finance company in connection with an

9

insurance transaction or premium finance transaction, any information that the person knows to contain false representations, or representations the falsity of which the person has recklessly disregarded, as to any material fact, or that withholds or conceals a material fact, concerning any of the following:

(A) The application for, rating of, or renewal of, any insurance policy;

(B) A claim for payment or benefit pursuant to any insurance policy;

(C) Payments made in accordance with the terms of any insurance policy . . . .

43. Defendants knowingly and recklessly misrepresented, or caused to be misrepresented, material facts to John Hancock as described in the preceding paragraphs.

44. The Service Bills (Exhibit A) submitted to John Hancock constitute false and fraudulent statements of material fact in that Ms. Vester did not actually provide the qualified caregiver services to the Insured at his home on the dates and times stated in the Service Bills.

45. Defendants intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated scheme to induce John Hancock to pay claims for home care services that were never actually rendered by Ms. Vester.

46. John Hancock reasonably and justifiably relied on the Defendants' false and fraudulent statements and concealments to its detriment, and John Hancock has been injured in its business and property by reason thereby in that it has paid benefits for claims that, unbeknownst to John Hancock at the time, were false, fraudulent, and not covered under the Policy.

47. Prior to completing its investigation in March 2022, John Hancock was completely unaware of the falsity and extent of Defendants' misrepresentations and could not have discovered Defendants' fraud.

48. As a direct and proximate result of Defendants' false and fraudulent misrepresentations, John Hancock paid $103,320.00 in benefits to which Defendants were not entitled.

49. John Hancock incurred additional losses in an amount to be determined at trial relating to the cost of investigating the claim.

### THIRD CLAIM FOR RELIEF – CIVIL CONSPIRACY

**(Against all Defendants)**

50. John Hancock restates, re-alleges, and incorporates herein by reference the preceding paragraphs of this Complaint as if fully set forth herein.

51. Defendants knowingly aided and abetted each other in perpetrating the fraudulent scheme on John Hancock. Specifically, Defendants, individually and collectively, conspired and joined forces to submit false and fraudulent claims for caregiver services that were never provided as detailed above. Their nefarious plan has defrauded John Hancock out of $103,320.00.

52. Defendants, as members of the conspiracy, are jointly and severely liable for each other's acts and omissions which were done in furtherance of the conspiracy.

53. Prior to completing its investigation in March 2022, John Hancock was completely unaware of the Defendants' unlawful scheme and could not have discovered Defendants' fraud.

54. As a direct and proximate result of Defendants' unlawful scheme, John Hancock paid $103,320.00 in benefits to which Defendants were not entitled.

55. John Hancock incurred additional losses in an amount to be determined at trial relating to the cost of investigating the claim.

## FOURTH CLAIM FOR RELIEF – MONEY HAD AND RECEIVED

### (Against all Defendants)

56. John Hancock restates, re-alleges, and incorporates herein by reference the preceding paragraphs of this Complaint as if fully set forth herein.

57. Beginning in or about August 15, 2016 through October 30, 2021, Defendants became indebted to John Hancock, in a sum to be proved at trial, but no less than $103,320.00 for money had and received by Defendants which in equity and good conscience belongs to John Hancock.

58. Prior to completing its investigation in March 2022, John Hancock was completely unaware of the falsity of Defendants' misrepresentations and could not have discovered Defendants' scheme.

59. John Hancock previously demanded repayment of the $103,320.00 in benefits wrongfully secured by Defendants from August 15, 2016 through October 30, 2021.

60. No repayment has been made by Defendants to John Hancock to date.

## PRAYER FOR RELIEF

WHEREFORE, John Hancock respectfully demands the following relief:

1. Under the First, Second, and Third Claims for Relief, actual and compensatory damages in an amount to be determined at trial, with pre-judgment and post-judgment interest thereon;

2. Under the First and Third Claims for Relief, punitive damages in an amount appropriate to punish or set an example of Defendants;

3. Under the Second Claim for Relief, all damages allowed under T.C.A. § 56-53-107, including return of the benefits unlawfully secured by Defendants, reasonable attorneys' fees, related legal expenses, economic damages, investigative fees, and treble damages;

4. Under the Fourth Claim for Relief, restitution against Defendants for all overpaid benefits under the Policy, with pre-judgment and post-judgment interest thereon;

5. Under all Claims for Relief, attorneys' fees and the costs of litigation; and

6. Any such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

1. John Hancock hereby requests a trial by jury.

Respectfully submitted on this 10th day of February, 2023.

*/s/ Emily C. Burke*
Emily C. Burke, Tennessee Bar No. 039223
MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North, Suite 1700
Birmingham, Alabama 35203
Telephone: 205-254-1000
Email: eburke@maynardcooper.com

***Attorneys for Plaintiff John Hancock Life Insurance Company (U.S.A.)***